## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MICHAEL LEONARD,
     Appellant,

v.

DEPARTMENT OF VETERANS
  AFFAIRS,
     Agency.

DOCKET NUMBER
CH-0752-14-0301-I-3

DATE: January 3, 2017

# THIS ORDER IS NONPRECEDENTIAL[1]

Justin Randolph, Esquire, Chicago, Illinois, for the appellant.

Janet M. Kyte, Esquire, and Robert Vega, Esquire, Hines, Illinois, for the
    agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which sustained his removal. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the administrative judge's finding that the agency proved its charge of failure to follow established police procedures,

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the administrative judge's findings concerning specification 4 of the failure to perform the duties of the position charge, the reasonableness of the penalty, and the appellant's affirmative defense of retaliation, and REMAND the case to the Board's regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      Effective March 8, 2013, the agency removed the appellant from his Criminal Investigator position with the Hines Veterans Administration (VA) Hospital Police Service based on the charges of lack of candor, failure to properly perform the duties of his position, failure to follow established police procedures, and poor judgment as a police officer. *Leonard v. Department of Veterans Affairs*, MSPB Docket No. CH-0752-14-0301-I-1, Initial Appeal File (IAF), Tab 8 at 26-28, 62-65. The appellant filed an appeal challenging his removal and raising an affirmative defense of retaliation for prior equal employment opportunity (EEO) activity. IAF, Tab 1 at 4; *Leonard v. Department of Veterans Affairs*, MSPB Docket No. CH‑0752-14-0301-I-3, Appeal File (I-3 AF), Tab 13 at 7. The appellant also raised, but subsequently withdrew, an affirmative defense of harmful error. IAF, Tab 1 at 4; I-3 AF, Tab 13 at 7.

¶3      After holding a hearing, the administrative judge issued an initial decision affirming the agency's action. I-3 AF, Tab 26, Initial Decision (ID). The administrative judge did not sustain the agency's lack of candor charge. ID at 3‑5. The administrative judge merged the charge of poor judgment as a police officer into the charges of failure to properly perform the duties of the position and failure to follow established police procedures.[2] ID at 5 n.2, 16 n.8. She sustained the failure to properly perform the duties of the position charge based on one of the four specifications and the failure to follow established police

_____

[2] On review, neither party challenges the administrative judge's decision to merge the charges.

procedures charge based on three of the four specifications. ID at 5-19. Further, she found that there was a nexus between the sustained charges and the efficiency of the service and that removal was within the tolerable limits of reasonableness. ID at 22-23. Finally, she found that the appellant did not prove his affirmative defense of retaliation for prior EEO activity. ID at 19-21.

¶4    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 3. The agency has opposed the appellant's petition. PFR File, Tab 5. The appellant has filed an untimely reply.[3] PFR File, Tab 6.

## ANALYSIS

### Remand is necessary for additional findings concerning whether the agency proved its charge of failure to properly perform the duties of the position.

¶5    The administrative judge did not sustain specifications 1 or 2 of this charge and the agency withdrew specification 3. ID at 5-9. The administrative judge sustained specification 4, in which the agency alleged that in October 2012, the Acting Police Chief, who was the proposing official, discussed with the appellant his concerns regarding the appellant's failure to perform independent investigations as to Reports of Survey[4] of missing agency property, and instructed him that he must conduct proper investigations, including interviews of relevant witnesses. IAF, Tab 8 at 63. The agency alleged that the appellant continued to conduct investigations of missing property without any independent investigation. *Id.*

¶6    The administrative judge found that the agency proved that the appellant failed to conduct independent investigations of missing property on multiple occasions after being instructed to do so. ID at 11-12. We agree with the

---

[3] We have not considered the appellant's reply, which was untimely filed on June 13, 2016, more than 10 days after the agency served its response on May 31, 2016, and which is not accompanied by a motion showing good cause for the untimely filing. PFR File, Tabs 4-6; *see* 5 C.F.R. § 1201.114(e)-(g).

[4] A Report of Survey is an inventory document that is generated when Government property is reported as lost or stolen. Hearing Transcript at 42-43, 66, 197-98, 379-80.

appellant that this was an error because the agency only offered one example of his failure to independently investigate, which was an October 2012 Report of Survey.[5]  PFR File, Tab 3 at 13‑14.  The administrative judge found that it was much more likely than not that the appellant conducted more than one investigation in the period between October 2012 and January 10, 2013, when the agency proposed his removal.  ID at 11-12.  In so finding, she relied on the appellant's general testimony "regarding the recurring nature and large number of these property losses and the little time he had to investigate."  ID at 11.  However, beyond the October 2012 Report of Survey, it is not clear from the record how many Reports of Survey the appellant completed after the October 2012 conversation or whether he conducted independent investigations in connection with any such Reports of Survey.  Moreover, both the appellant and his supervisor testified that, at some point prior to the appellant's removal, investigations of missing property were reassigned to the police patrol.  PFR File, Tab 3, Hearing Transcript (HT) at 51‑52, 121.  Accordingly, we vacate the administrative judge's finding that the agency proved that the appellant failed to conduct independent investigations *on multiple occasions* after October 2012.

¶7       Additionally, in sustaining specification 4, the administrative judge relied on the proposing official's testimony that, during an October 2012 conversation, he directed the appellant to conduct independent investigations regarding Reports of Survey, including interviewing witnesses and showing all work leading to and supporting his findings, but that the appellant failed to change how he conducted investigations.  ID at 10.  The administrative judge further cited the proposing official's testimony that he spoke to the appellant at the urging of the head of logistics, who previously had discussed these concerns with the appellant.  *Id.*

---

[5] The initial decision erroneously references this Report of Survey as being dated December 2012, instead of October 2012.  ID at 10; IAF, Tab 9 at 91.

The administrative judge also found that the appellant "did not dispute he failed to follow agency direction to conduct independent investigations." ID at 11.

¶8    On review, the appellant contends that the administrative judge failed to consider his testimony to the contrary and make proper credibility determinations. PFR File, Tab 3 at 10. We agree. The record reflects that the appellant disputed the proposing official's testimony concerning the substance of their October 2012 conversation. He testified that the proposing official did not mention the need for him to conduct independent investigations, but rather questioned him about the Reports of Survey appearing redundant. HT at 119‑20. He further testified that the proposing official was not "abreast of the system" concerning the way Reports of Survey were handled and that he explained to the proposing official that, under the system in place, he sometimes did extensive and sometimes limited investigations based on information from the Board of Survey.[6] HT at 119-21. According to the appellant, under the system in place, the agency's Board of Survey first looked at the Reports of Survey and then determined whether any further investigation was needed by the appellant. IAF, Tab 8 at 46-47. The appellant contends that the proposing official did not direct him to alter this process. *Id*.

¶9    The appellant also disputed that the head of logistics previously had talked to him about how he conducted investigations and testified that he only had expressed concern that the Reports of Survey be completed more quickly. HT at 116-17, 138-39. The appellant further asserts that the administrative judge failed to consider his supervisor's testimony that, before the arrival of the

---

[6] The role and involvement of the Board of Survey in investigating missing property is unclear from the record. The parties dispute whether the Board of Survey investigated missing property, the scope of any such investigation, and whether the appellant was required to conduct an independent investigation after receiving a finding from the Board of Survey that property was lost due to inadequate inventory management control, as in the case of the October 2012 Report of Survey. HT at 288-97, 429-35; IAF, Tab 8 at 46-47.

proposing official, there were no complaints about the appellant's investigations and that the prior head of logistics had commented that the appellant's investigations were detailed.  PFR File, Tab 3 at 9; HT at 50-51.

¶10    Accordingly, we remand the appeal to the administrative judge to make credibility findings concerning whether, during the October 2012 conversation, the proposing official directed the appellant to conduct independent investigations, including witness interviews, and, if so, whether the appellant failed to conduct a proper investigation of the October 2012 Report of Survey. *See, e.g.*, *Posey v. Department of Defense*, 106 M.S.P.R. 472, ¶ 13 (2007) (stating that the administrative judge, who heard the testimony firsthand and observed the demeanor of the witnesses, is in the best position to assess credibility).

¶11    The appellant's remaining arguments concerning this charge are unpersuasive.  First, he argues that he was prejudiced because the deciding official testified regarding investigation procedures for Reports of Survey set forth in the national policy without producing a copy of the policy.[7]  PFR File, Tab 3 at 10.  However, the administrative judge did not rely on any testimony or procedures regarding the national policy in making her findings.  ID at 11.  Further, the deciding official testified that, in sustaining this specification, she considered the appellant's failure to abide by the directions of the proposing official to conduct independent investigations, not any alleged failure to follow the procedures in the national policy.  HT at 384-85.  Second, he argues that the charge is properly construed as a failure to follow instructions charge and the agency failed to meet its burden of proving the elements of such a charge.  PFR File, Tab 3 at 11-13.  We find such a distinction is immaterial because the

---

[7] The appellant has submitted a copy of the national policy for the first time on review. PFR File, Tab 3 at 476-86.  We have not considered this document because the appellant has not shown that it was unavailable before the record closed despite his due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980); 5 C.F.R. § 1201.115(d).

appellant's failure to perform his duties as directed by his supervisors amounts to a failure to perform his positions duties.

The administrative judge correctly found that the agency proved the charge of failure to follow established police procedures.

¶12     The administrative judge sustained three of the four specifications supporting the agency's charge of failure to follow police procedures, which relate to the appellant's failure to comply with agency policy to be in possession of his assigned weapon at all times while on duty. ID at 12‑18. As described in the initial decision, in specification 1, the agency alleged that the appellant violated this policy on 51 separate dates between October 2010 and July 2012, when he was not armed for all hours he was on duty. IAF, Tab 8 at 63. As the initial decision indicates, in specification 2, the agency alleged that the appellant violated this policy on July 2, 2012, when he responded to a felony arrest scene unarmed. *Id.* As set forth in the initial decision, in specification 3, the agency alleged that, after being instructed on November 16, 2012, that he must be armed at all times while on duty, on November 21, 2012, the appellant was not armed for all hours while on duty.[8] *Id.* at 64.

¶13     Regarding the first specification, the administrative judge found that the appellant admitted to being unarmed on the majority of the dates set forth in the specification. ID at 14-15. Regarding the second specification, the administrative judge found that the appellant did not dispute that he was unarmed at the felony arrest scene on July 2, 2012. ID at 16. Regarding the third specification, the administrative judge found that the attendance records and weapons log indicated that the appellant was not armed for all hours while he was on duty on November 21, 2012.[9] ID at 17-18.

---

[8] Specification 3 also charged the appellant with not being armed for all hours he was on duty on December 13, 2012, IAF, Tab 8 at 64, but the agency withdrew this date at the hearing, I-3 AF, Tab 23, Hearing Compact Disc (HCD), track 1 at 46:00.

[9] The administrative judge found that the agency proved that the appellant violated the weapons policy when he was unarmed at times on December 13, 2012, despite the fact

¶14       On review, the appellant argues, for the first time, that he was not required to follow the weapons policies because his position description indicates that such policies are merely guidelines for criminal investigators.  PFR File, Tab 3 at 15. We generally will not consider this argument because the appellant has not shown that he could not have raised it before the administrative judge.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980); 5 C.F.R. § 1201.115(d).   He also contends that the agency failed to show certain exceptions to the policy did not apply and the administrative judge incorrectly shifted the burden to him to show that they did apply.  PFR File, Tab 3 at 16. However, the agency's burden of proving its charges by preponderant evidence does not require it to show that each and every exception to the rule did not apply for each date.  *See* 5 C.F.R. § 1201.4(q) (defining preponderant evidence as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue); *see also* 5 C.F.R. § 1201.56(b)(1)(ii).

¶15       Regarding specification 2, the appellant disputes, as he did below, whether he technically "responded" to the scene or was a "responding officer" because he contends that the suspects had been apprehended prior to his arrival.  PFR File, Tab 3 at 17.  He also argues that the agency failed to show that, as a criminal investigator, he was required to have a weapon at the scene.  *Id.*   The administrative judge found that the relevant policy required the appellant to be in possession of his weapon while on duty on department property.  ID at 13.  The appellant does not dispute that he was present at the scene unarmed.  Nor did he dispute that the incident occurred on department property.  Although he testified that he was on the way to a funeral when he was called to the scene, HT at 137, the administrative judge credited the proposing official's testimony that the

that the agency withdrew this specification as to this date.  ID at 17-18.  Accordingly, we vacate this finding.

appellant either should not have reported to the scene unarmed or should have obtained a weapon before responding, ID at 16-17.

¶16     The appellant also reiterates his argument that the agency failed to show that his failure to have a weapon at the scene on July 2, 2012, put others at risk because the suspects already had been detained.  PFR File, Tab 3 at 17.  The administrative judge considered this argument, but found that the appellant's decision to show up at a felony arrest scene unarmed rendered him vulnerable, without means of defending himself and others if the situation changed, thereby putting himself and other people at risk.  ID at 17.  Thus, the appellant's argument constitutes mere disagreement with the administrative judge's findings, and does not provide a basis for reversal.  *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *see also Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶17     Lastly, we find unavailing the appellant's contention that specification 3 should be construed as a charge of failure to follow instructions.  PFR File, Tab 3 at 17-19.  It is well settled that the Board adjudicates the charges invoked by the agency as described in the agency's proposal and decision notices.  *See, e.g.*, *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table); *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989).  We agree with the administrative judge that the agency proved that the appellant was not armed for all hours while on duty on November 21, 2012.  ID at 17-18.  The record reflects that he worked from 8 a.m. to 4 p.m., but only checked out his weapon from 7:44 to 13:03.  IAF, Tab 11 at 57, 66.  Thus, he was unarmed while on duty for about 3 hours.  Accordingly, the administrative judge properly sustained the charge based on the three sustained specifications.  *See, e.g.*, *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (finding that, when more than one event or factual specification supports a

single charge, the agency need not prove all of the specifications; rather, proof of one or more of the supporting specifications is sufficient to sustain the charge).

We vacate the administrative judge's penalty analysis and remand the appeal for reconsideration of the reasonableness of the penalty.

¶18    The administrative judge deferred to the agency's decision to remove the appellant, relying on the deciding official's testimony that she would have removed the appellant even absent the lack of candor charge.  ID at 22-23.  On review, the appellant argues that the administrative judge should have considered whether removal was reasonable in light of the sustained charges and specifications and mitigating factors.[10]  PFR File, Tab 3 at 24-30.  We agree.

¶19    When an agency fails to prove all of its charges, the administrative judge must consider carefully whether the sustained charges merit the penalty imposed by the agency.  *Reid v. Department of the Navy*, 118 M.S.P.R. 396, ¶ 24 (2012).  In such circumstances, if the agency does not indicate that it desires a lesser penalty to be imposed on fewer charges, the Board may mitigate to the maximum reasonable penalty if a careful balancing of the mitigating factors warrants, or the Board may impose the same penalty imposed by the agency based on justification of that penalty as the maximum reasonable penalty after balancing those factors.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *Parker v. U.S. Postal Service*, 111 M.S.P.R. 510, ¶ 6, *aff'd*, 355 F. App'x 410 (Fed. Cir. 2009).  An agency's failure to prove all of its supporting specifications may require, or contribute to, a finding that the agency's penalty is not reasonable.  *See Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996).

¶20    Here, the lack of candor charge was not sustained, and three of the four specifications underlying the failure to properly perform the duties of the position

---

[10] The appellant also argues that the agency failed to prove a nexus between the sustained misconduct and the efficiency of the service because there is no clear relationship between the sustained specifications and his job duties.  PFR File, Tab 3 at 21-24.  We find that the appellant's assertions on review do not demonstrate error in the administrative judge's well-reasoned analysis on this point.  ID at 22.

charge and one of the four specifications underlying the failure to follow established police procedures charge were not sustained or withdrawn. The agency also withdrew one of the dates underlying specification 3 of its failure to follow established police procedures charge. Although the administrative judge cited the deciding official's testimony that she would have removed the appellant absent the lack of candor charge, such testimony does not take into consideration the fact that the agency failed to prove or withdrew many of the specifications in support of the sustained charges. Thus, it does not establish that the agency would have imposed the same penalty for the sustained specifications because there is a significant difference between the misconduct that the agency specified and the misconduct ultimately sustained. Accordingly, on remand, the administrative judge must determine the maximum reasonable penalty appropriate for the sustained charges and specifications.

¶21      In assessing the reasonableness of the penalty, the administrative judge should consider such factors as the nature and seriousness of the offense, the employee's past disciplinary record, the consistency of the penalty with the agency's table of penalties, and the consistency of the penalty with those imposed on other employees who engaged in similar misconduct. *See O'Lague v. Department of Veterans Affairs*, 123 M.S.P.R. 340, ¶ 18 (2016); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981). In particular, the administrative judge should consider whether the appellant's failure to have his weapon in his possession at all times while on duty prior to November 16, 2012, the dates underlying specifications 1 and 2 of the agency's failure to follow police procedures charge, constituted a common practice, and whether other employees were disciplined for such violations.

¶22      It appears undisputed that the agency's weapons policy, which required officers to be armed at all times while on duty, was not strictly observed or enforced prior to November 16, 2012, several months after the proposing official became the Acting Police Chief. The proposing official testified that after he

became Acting Police Chief in May 2012, he observed that the agency's weapons policy was not being followed and a few officers did not check out their firearms on a daily basis. HT at 175, 187. As a result, on November 16, 2012, he sent an email to seven officers, including the appellant, expressing as much. HT at 187; IAF, Tab 12 at 5. In his email, he stated, "[m]any of you rarely arm up upon arriving to work" and indicated that moving forward the policy would be enforced and future violations would result in discipline. IAF, Tab 12 at 5.

¶23    The proposing official further testified that he did not discipline or propose discipline for any other officer for violating this policy. HT at 335. The deciding official concurred that she had not dealt with any disciplinary actions relating to any officer being disciplined for violating the weapons policy, but that she would not have seen disciplinary actions of less than a 14-day suspension. HT at 445‑46. The appellant's supervisor also testified that the weapons policy was not strictly followed prior to the proposing official's arrival and he was not aware of anyone who had ever been disciplined for failing to follow it. HT at 46. Notwithstanding these circumstances, the agency charged the appellant with violating the weapons policy on numerous dates prior to November 16, 2012, when it began enforcing the policy. IAF, Tab 8 at 63.

¶24    The appellant raised a claim of disparate penalties below, which the administrative judge acknowledged in the prehearing order, I-3 AF, Tab 13 at 6-7, but did not address in the initial decision. The record does not contain facts sufficient to ascertain what penalty, if any, the agency has imposed for conduct similar to the sustained charges. *Lewis v. Department of Veterans Affairs*, 113 M.S.P.S. 657, ¶ 15 (2010). Accordingly, on remand, the administrative judge shall provide the parties an opportunity to submit supplemental evidence and argument concerning the circumstances and factors relevant to the determination of a reasonable penalty.

The administrative judge failed to assess all relevant evidence concerning the appellant's affirmative defense of retaliation.

¶25    The administrative judge found that the appellant failed to provide any direct or circumstantial evidence of retaliation for his prior EEO activity; namely the filing of a formal complaint of discrimination on February 25, 2013,[11] because both the proposing and deciding officials testified that they were not aware of this activity.  ID at 20-21.  The administrative judge further found that the appellant provided no other evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees with prior EEO activity, or other facts from which an inference of retaliatory intent might be drawn.  ID at 21.

¶26    On review, the appellant contends that the administrative judge improperly found that the proposing and deciding officials were not aware of his prior EEO activity.  PFR File, Tab 3 at 20.  The record contains conflicting evidence concerning whether the proposing official was aware of the appellant's prior EEO activity.  The appellant testified that he filed an EEO complaint in mid-2012, concerning the lack of a proper investigation of an incident between him and a coworker who had threatened to kill him.  HT at 95, 141-44.  According to the appellant, the proposing official was aware of his 2012 EEO complaint because he participated in efforts to informally resolve it through mediation.  HT at 143.  The appellant's supervisor testified that he participated in a mediation of the appellant's 2012 EEO complaint and discussed the appellant's requested settlement with the proposing official.  HT at 56-58.  According to the appellant's supervisor, the proposing official rejected the appellant's proposed settlement and removed the appellant's supervisor from further participation in the mediation.  HT at 57-58.  The proposing official, however, testified that he was not aware of the appellant's 2012 EEO activity.  HT at 325-27.

---

[11] The initial decision references this EEO complaint as being filed on February 25, 2013, ID at 20, but it was filed on February 26, 2013, IAF, Tab 27 at 128, 132.

¶27    The appellant also filed an EEO complaint on February 26, 2013, which he subsequently amended to include his removal. IAF, Tab 27 at 128. The proposing official was aware of this EEO complaint and provided testimony in connection with it. *Id.* at 129; HT at 315. The proposing official, however, could not have proposed the appellant's removal in retaliation for the appellant's February 26, 2013 EEO complaint because the record reflects that the appellant did not initiate contact with an EEO counselor regarding this complaint until February 8, 2013, after his removal already had been proposed on January 10, 2013. IAF, Tab 8 at 62, Tab 27 at 132.

¶28    We agree that the administrative judge improperly found that the deciding official was unaware of the appellant's prior EEO activity because she did not testify that she had no knowledge of such activity. PFR File, Tab 3 at 20; ID at 21. Rather, she testified that she was aware that the appellant had alleged in his response to the proposed removal that the proposing official was retaliating against him for his prior EEO activity. HT at 458. Accordingly, on remand, the administrative judge shall assess all relevant testimony concerning whether the proposing and deciding officials were aware of the appellant's prior EEO activity and make necessary credibility determinations to resolve conflicting testimony.

¶29    On review, the appellant also argues that the administrative judge failed to analyze all relevant evidence concerning his retaliation claim.[12] PFR File, Tab 3 at 20-21. Significantly, he contends that the administrative judge failed to consider evidence that the proposing official was found to have committed reprisal, as well as evidence that, shortly after he became Acting Police Chief, the

---

[12] We have not considered the appellant's argument raised for the first time on review that his removal was due to race discrimination. PFR File, Tab 3 at 19-20. Although the appellant alleged race discrimination in his EEO complaint, IAF, Tab 27 at 128, he did not raise an affirmative defense of race discrimination before the administrative judge, IAF, Tab 1 at 4; I-3 AF, Tab 13 at 7-8, and he has not shown that his claim is based on any new and material evidence that was not previously available despite his due diligence, *see Banks*, 4 M.S.P.R. at 271; 5 C.F.R. § 1201.115(d).

proposing official had asked for a list of names of officers who had engaged in prior EEO activity. *Id.* at 7, 21. Based on our review of the record, we agree with the appellant that the initial decision did not adequately summarize the evidence relating to his retaliation claim. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (stating that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

¶30    The record contains a copy of a final agency decision regarding the appellant's February 26, 2013 EEO complaint. IAF, Tab 27 at 128-50. In this complaint, the appellant alleged that he was subjected to discrimination and retaliation from May 2012 until he was removed on March 8, 2013, when the proposing official made derogatory statements about the EEO process, failed to prevent interaction between the appellant and a coworker who made a death threat against him, issued him a letter of inquiry accusing him of defrauding the Government by claiming overtime for hours he did not work, unjustly accused him of violating the agency's weapon's policy, while not questioning other officers who had engaged in the same conduct, and removed him. *Id.* at 128-32.

¶31    In its final agency decision, the agency determined that the proposing official had engaged in "per se reprisal" by expressing hostility toward the EEO process. *Id.* at 138-41. The agency found that, during supervisory meetings, which the appellant attended, the proposing official made statements to the effect that he "didn't care about EEO [complaints]" and that he would "fight them tooth and nail." *Id.* at 130, 138-41. At the hearing, the appellant's supervisor testified as to having heard the proposing official make comments to this effect. HT at 53. The appellant's supervisor also testified that, in the spring of 2012, shortly after the proposing official became the Acting Police Chief, the proposing official asked him for a list of people who "came back after . . . their EEO [complaints] were settled with the court system or MSPB." HT at 53-55. The administrative

judge found that the appellant did not provide any evidence of behavior toward or comments directed at employees with prior EEO activity without mentioning any of this evidence.

¶32    The appellant also argued below that the proposing official was searching to find reasons to fire him and intentionally charged him with misconduct that he knew he could not prove in retaliation for the appellant's prior EEO activity. I‑3 AF, Tab 23, Hearing Compact Disc (HCD), track 2. First, he alleged that, in his response to the notice of proposed removal, he pointed out numerous factual errors in the proposal notice, but the agency ignored them and sustained his removal. I-3 AF, Tab 12 at 2‑3. He also claimed that the agency failed to prove or withdrew many of its specifications. I-3 AF, Tab 23, HCD, track 2.

¶33    Second, he argued that the proposing official retaliated against him by charging him with violating the agency's weapons policy because he did not discipline any of the other similarly situated employees who also had violated the policy. He contended that the agency offered no explanation as to why it disciplined him, but did not discipline other employees. I-3 AF, Tab 23, HCD, track 2; IAF, Tab 27 at 131. The appellant also contends that the administrative judge failed to consider that the agency was searching for reasons to fire him as evidenced by the fact that it charged him with failing to be armed at a felony arrest scene on July 2, 2012, an incident that occurred over 6 months prior to his proposed removal, and for which he was not disciplined at the time. HT at 162‑63; PFR File, Tab 3 at 16.

¶34    Third, he argued that the proposing official intentionally assigned the same coworker who had threatened to kill the appellant, and about whom the appellant filed his 2012 EEO complaint, to investigate the charges knowing that he would be biased against the appellant. I-3 AF, Tab 12 at 1-2, Tab 23 HCD, track 2. The appellant contended that the evidence established that this coworker did not conduct a legitimate investigation, and that notwithstanding numerous problems

with his report of investigation, the agency relied upon an incomplete draft report to remove the appellant. I-3 AF, Tab 23, HCD, track 2.

¶35     The investigation conducted by the coworker related to specification 1 of the agency's charge of failure to properly perform job duties in which the agency alleged that the appellant failed to follow up on altered receipts provided to him regarding an investigation of theft. IAF, Tab 8 at 62, 72-75. The administrative judge did not sustain this specification, finding that the report drafted by the coworker, and relied up by the agency to remove the appellant, was an incomplete preliminary draft, not a final draft, it was dated the same date that the coworker had been appointed to look into the appellant's handling of the incident, but its text referred to investigatory work completed by the coworker on subsequent dates, and it was missing words or sentences and at least one page.[13] ID at 6-8. The administrative judge further found that this report did not represent a thorough examination of the matters at issue, and that the coworker came to the cursory conclusion that the appellant mishandled the investigation, not on any factual basis, but based on his "many years of education, experience and knowledge," which she found too speculative. *Id.* at 7.

¶36     In light of the foregoing, we remand the appeal for further consideration of the appellant's affirmative defense. On remand, the administrative judge shall assess all relevant evidence and make new findings as to whether the appellant proved that his removal was a result of retaliation.

## ORDER

¶37     For the reasons discussed above, we remand this case to the regional office for further adjudication. On remand, the administrative judge shall make credibility findings to determine whether the agency proved its failure to perform

[13] The coworker who drafted the report testified that the report in the agency file was his preliminary draft and, at the hearing he produced a copy of the final report. I-3 AF, Tab 22, HCD, track 4 at 45:00; *compare* IAF, Tab 8 at 72-75, *with* I-3 AF, Tab 25 at 1‑5.

the duties of the position charge and analyze all relevant evidence to determine whether the appellant proved his affirmative defense of retaliation. If the administrative judge finds that the appellant has not proven his affirmative defense, she shall determine the maximum reasonable penalty for the sustained misconduct, considering all facts, circumstances, and mitigating factors. She shall allow the parties an opportunity to submit briefing concerning the circumstances and factors relevant to the determination of a reasonable penalty.


FOR THE BOARD: _____
                                   Jennifer Everling
                                   Acting Clerk of the Board

Washington, D.C.